UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

DWIGHT JEROLMON,

              Plaintiff,
v.                                                                3:10-CV-267 (CSH)

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                  January 18, 2013

              Defendant.

**MEMORANDUM AND ORDER
FOR SUBMISSIONS RE:  PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

    Plaintiff Dwight Jerolmon brought this action to review the decision of the Defendant Commissioner of Social Security denying him disability insurance benefits.  The Commissioner's ruling, adverse to Plaintiff, affirmed the decision of an Administrative Law Judge of the Social Security Administration denying Plaintiff benefits after a hearing.  The parties' cross-motions were referred to Magistrate Judge Joan G. Margolis, who issued a Report and Recommendation which, if approved by this Court, would have denied Plaintiff disability benefits, since Judge Margolis recommended that the Commissioner's denial of benefits be affirmed.  In an opinion reported at 869 F.Supp.2d 265 (D. Conn. 2012), familiarity with which is assumed, this Court denied Plaintiff's motion for judgment on the pleadings; denied the Commissioner's cross-motion to affirm his decision denying benefits to Plaintiff; and remanded the case to the Commissioner for further proceedings.  Presumably, Jerolmon's claim is still pending before the agency on remand.

    Plaintiff, who was represented throughout the proceedings in this Court by the Law Offices of Harry J. Binder and Charles E. Binder, P.C. ("the Binder Firm"), now moves for an order

awarding him attorney's fees in the amount of $8,853.67 and $350 in costs. The motion lies under section 204(d) of the Equal Access to Justice Act (EAJA), codified in 28 U.S.C. § 2412(d), which provides in pertinent part that "a court shall award to a prevailing party . . . fees and other expenses . . . in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).

The Commissioner objects to Plaintiff's application for attorney's fees, at least in the requested amount.  His opposing brief [Doc. 22] makes several arguments in support of his objections, all of which Plaintiff refutes in his reply brief [Doc. 23].  These submissions give rise to a number of disputes.  In this Memorandum, the Court neither decides nor intimates any view with respect to any of those disputes.  Rather, the Court raises *sua sponte* a question with respect to the form in which Plaintiff asserts a claim for attorney's fees.

In *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983), the Second Circuit laid down a firm rule with respect to awarding attorney's fees:

> Now that Congress has enacted more than 120 statutes authorizing the award of attorney's fees, and litigation over attorney's fees has itself become a significant addition to the legal landscape, we think it appropriate to convert our previously expressed preference for contemporaneous time records into a mandatory requirement, as other Circuits have done. Hereafter, any attorney . . . who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document the application with contemporaneous time records. . . . All applications for attorney's fees, whether submitted by profit-making or non-profit lawyers, for any work done after the date of this opinion should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done.

711 F.2d at 1147-48, 1154 (internal citations omitted).  Perceiving a possible tension between the word "normally" in the last quoted sentence from *Carey* and the "mandatory requirement" expressed earlier in that opinion, the Second Circuit said in *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) that while its use of the word "normally" in *Carey* "indicates that we intend to leave the district courts with some limited discretion to make exceptions to the hard-and-fast rule," nonetheless "*Carey* sets out unequivocally that absent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications. . . . In other words, *Carey* establishes a strict rule from which attorneys may deviate only in the rarest of cases."

There seems no reason to suppose that the mandatory requirements the Second Circuit laid down in *Carey* do not apply to fee applications under the EAJA.  On the contrary: the opposite is true.  Judge Newman's opinion in *Carey* identifies the enactment by Congress of "more than 120 statutes authorizing the award of attorney's fees" as the inspiration for the Second Circuit's conversion of a "preference for contemporaneous time records into a mandatory requirement," and the EAJA is such a statute.  In *Bliven v. Hunt*, 579 F.3d 204 (2d Cir. 2009), a civil rights case based on 42 U.S.C. § 1983, the Second Circuit referred to a number of other federal statutes, *including the EAJA*, as examples of statutes "authorizing the court to award  'a reasonable attorney's fee' to a prevailing private party," and then said: "In cases under the above statutes, the governing principles and procedures are essentially the same.  Applications for awards of fees must be documented by time records." 579 F.3d at 213 (internal citations and quotation marks omitted).  The *Bliven* court then cited, as one of the "governing principles and procedures," the holding in *Carey* that "contemporaneously created time records should 'specify, for each attorney, the date, the hours expended, and the nature of the work done.'").  *Id.* (quoting Carey, 711 F.2d at 1148).  At least one

3

district court in this Circuit has applied the *Carey* rule to a fee award application under the EAJA: *see O'Grady v. Heckler*, 629 F.Supp. 1186, 1187 (E.D.N.Y. 1986) ("unless there is contemporaneous documentation of work performed before this Court, no fees will be awarded under the EAJA for work performed before June 15, 1983") (citing *Carey*).

The problem with Plaintiff's EAJA application for an award of his attorney's fees is that the Binder Firm has not submitted contemporaneous time records in support of the application. Charles Binder's affirmation [Doc. 20-2] says in ¶ 6 that a lawyer with the Firm, Eddy Pierre Pierre, "expended 44.75 hours working on the Plaintiff's case at the federal level (a contemporaneous schedule of his hours is attached to this Affirmation as Exhibit A)." Mr. Binder says in ¶ 8: "I expended 4.50 hours working on Plaintiff's case at the federal level (a contemporaneous schedule of my hours is attached to this Affirmation as Exhibit A)."

Exhibit A is a one-page single-spaced document purporting to list and briefly describe 14 different renditions of legal services on the case rendered by Mr. Pierre or Mr. Binder on specified days during a period of time beginning on February 21, 2010 and ending on August 31, 2012. Doc. 20-3. Mr. Binder's descriptions of this document as "a contemporaneous schedule of his hours" (Mr. Pierre) and "a contemporaneous schedule of my hours" (Mr. Binder) reveal his awareness of what the *Carey* rule requires, but the terse notations collected on this single page cannot be regarded as "contemporaneous," either by legal standards or simple English usage. In *Handschu v. Special Services Division*, 727 F.Supp.2d 239, 249 (S.D.N.Y. 2010), I had occasion to say:

> There are two elements to this mandated record keeping: time and content. As to time: The records must be made contemporaneously, which is to say, while the work is being done or, more likely, immediately thereafter. Descriptions of work recollected in tranquility days or weeks later will not do.

One recognizes, of course, that the Second Circuit decided *Carey* in 1983.  During the ensuing 30 years, changes have taken place in the technology of record keeping, as the human race progresses from Dickensian scrivening to electronic entries and computerized databases.  But changes in method do not eliminate *Carey*'s mandates.  The reconciliation of the two is illustrated by *Cruz v. Local Union Number 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148 (2d Cir. 1994), where union members, suing a union for breach of the duty of fair representation in violation of the NLRA, were entitled to recover attorney's fees for having achieved a common good.

This discussion by the Second Circuit is instructive:

> Local Union No. 3 claims that attorney's fees should not have been awarded herein because, *inter alia*, Davis & Eisenberg did not submit actual contemporaneous time records, but instead submitted a typed listing of their hours *from their computer records*.  This argument is unpersuasive.  A review of the submissions made by Davis & Eisenberg shows that they made contemporaneous entries *as the work was completed*, and that their billing was based *on these contemporaneous records*.  We believe this falls sufficiently within the meaning of "contemporaneous," and that such a practice is not contrary to the dictates of *Carey*.

34 F.3d at 1160 (emphasis added).

Applying that sensible and pragmatic analysis to the case at bar, the Court will not grant Plaintiff an award of attorney's fees on the present application, which fails to comply with Second Circuit law, as stated in *Carey* and its progeny, requiring that fee applications be accompanied by contemporaneous time records. However, guided by the Second Circuit's decision in *Cruz*, this Court will consider proof from the Binder Firm that during the period of time covered by this application for attorney's fees, there existed at the Firm practices, procedures, record-keeping technology and the like, the practical consequence of which is to imbue the typed notations on the

present Exhibit A with the substance, if not the form, of contemporaneous entries accurately describing what a particular attorney was doing on a particular day. Such proof must take the form of a sworn statement by a member of the Binder Firm, and be filed and served not later than **January 31, 2013**, failing which the motion will be decided on the present record. Alternatively, the Binder Firm may, if so advised, within that time frame submit a brief contending that the *Carey* mandates do not apply to applications for attorney's fee awards under the EAJA.

      Lastly, the Court notes that the Defendant Commissioner did not raise this issue in his brief opposing Plaintiff's motion. The Court raises the issue *sua sponte* because it is not prepared to make an award of attorney's fees in response to an application which fails to comply with governing Second Circuit authority. This Memorandum and Order allows for further submissions by Plaintiff and the Binder Firm in order to ensure the fairness of the process for all concerned. If the Defendant wishes to file papers in response to any further submissions by Plaintiff or his counsel contemplated by this Memorandum, Defendant may do so on or before **February 15, 2013.**

      The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
      January 18, 2013

      /s/Charles S. Haight, Jr.
      CHARLES S. HAIGHT, JR.
      SENIOR UNITED STATES DISTRICT JUDGE